# Exhibit 1

DocuSign Envelope ID: 0922B030-40DD-4898-A58C-AC81E98CE535

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TERRY RATCLIFFE, on behalf of herself and all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 18-cv-01177 |
| | Judge Eli J. Richardson |
| FOOD LION, LLC, | Magistrate Judge Alistair E. Newbern |
| Defendant. | |

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Plaintiff (as hereinafter defined), Collective Members (as hereinafter defined), and Defendant (as hereinafter defined) (together, the "Parties").

## RECITALS

**WHEREAS**, Plaintiff Terry Ratcliffe ("Plaintiff") filed this collective action litigation against Defendant Food Lion, LLC ("Defendant") on October 22, 2018 asserting claims under the Fair Labor Standards Act ("FLSA");

**WHEREAS**, Plaintiff sought recovery of, among other things, unpaid overtime wages, liquidated damages, pre- and post- judgment interest, attorneys' fees, and costs;

**WHEREAS**, Plaintiff moved for conditional certification of the FLSA Collective Action on November 29, 2018.

**WHEREAS**, Defendant filed its opposition to Plaintiff's motion for conditional certification on December 20, 2018.

**WHEREAS**, on August 16, 2019, the Court entered an order denying Plaintiff's motion for conditional certification.

**WHEREAS**, on August 30, 2019, Plaintiff filed a motion to reconsider the Court's August 16, 2019 order pursuant to Federal Rule of Civil Procedure 54(b) and, in the alternative, 28 U.S.C. § 1292(b);

**WHEREAS**, on November 20, 2019, the Court vacated its earlier order, and conditionally certified the proposed Collective of Assistant Store Managers ("ASMs") who work or worked for Defendant between March 17, 2015 and November 20, 2019;

1

**WHEREAS**, on January 29, 2020, the Court approved the Parties' stipulation and approved the distribution of the notice to all ASMs who work or worked for Defendant between March 17, 2015 and November 20, 2019 ("Potential Collective Members");

**WHEREAS**, according to the Parties' stipulation governing the notice process, potential Collective Members had 60 days from the date of initial mailing, or until May 1, 2020, to respond and opt in to the Collective.

**WHEREAS**, the Parties agreed in April 2020 to engage in negotiation discussions regarding the possibility of a voluntary resolution of the claims asserted in the Litigation (as hereinafter defined), and exchanged ASM employment and payroll data;

**WHEREAS**, after the close of the notice period, the Parties entered in a stipulation concerning opt-in discovery on July 6, 2020;

**WHEREAS**, on August 17, 2020, the Parties participated in a one-day mediation session with an experienced wage and hour law mediator, Michael L. Russell, Esq;

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all claims asserted in the Litigation and those claims that could have been asserted, relating to the non-payment of overtime to individuals employed by Defendant in the position of ASM who have filed a consent to join this lawsuit and not withdrawn their consent to join, as well as Plaintiff;

**WHEREAS**, Defendant denies all the allegations made by Plaintiff in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

**WHEREAS**, Counsel for Plaintiff and Collective Members (as hereinafter defined) have conducted initial discovery including, but not limited to, interviewing Plaintiff and Collective Members, and reviewing and analyzing initial discovery documents produced by Defendant;

**WHEREAS**, Counsel for Plaintiff and Collective Members have analyzed and evaluated the merits of the claims made against Defendant in the Litigation, and the impact of this Agreement on Plaintiff and Collective Members;

**WHEREAS**, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to Collective Members, and that would not occur for several years, or at all, Counsel for Plaintiff and Collective Members are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interest of the Collective.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1. **DEFINITIONS**

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1 **Agreement; Settlement Agreement**. "Agreement" or "Settlement Agreement" shall mean this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

1.2 **Approval Date.** "Approval Date" shall mean the date of the Court's Order Granting Approval of the Settlement.

1.3 **Approval Motion**. "Approval Motion" shall mean the Motion for Order Approving Settlement of Collective Action that Plaintiff shall file with the Court to request approval of this Agreement and its terms.

1.4 **Assistant Store Manager; ASM**. "Assistant Store Manager" or "ASM" shall mean those persons employed by Defendant as Assistant Store Managers in the United States.

1.5 **Claims Administrator**. "Claims Administrator" shall mean the entity selected by Plaintiff and approved by Defendant to provide notice to Collective Members and administer payment of the settlement to Collective Members. The Parties have preliminarily identified CAC Services Group, LLC as the Claims Administrator.

1.6 **Collective; Collective Members**. "Collective" or "Collective Members" shall mean all persons who joined this Litigation by filing consent to join forms and who work or worked as Assistant Store Managers for Defendant and have not withdrawn his or her consent to join form.

1.7 **Counsel for Plaintiff and Collective Members**. "Counsel for Plaintiff and Collective Members" shall mean Outten & Golden LLP; Conway Legal, LLC; and Yezbak Law Offices PLLC.

1.8 **Court**. "Court" shall mean the United States District Court for the Middle District of Tennessee, Nashville Division.

1.9 **Defendant**. "Defendant" shall mean Food Lion, LLC.

1.10 **Defendant's Counsel**. "Defendant's Counsel" shall mean Jackson Lewis, P.C.

1.11 **Effective; Effective Date**. "Effective" or "Effective Date" shall mean the date on which this Agreement becomes effective, which is the later of (a) thirty (30) calendar days following the Court's Order Granting Approval of the Agreement if no appeal is taken of such Order, or (b) the date of the Court's entry of a Final Order and Judgment after any appeals are resolved.

1.12 **Eligible Work Week**. "Eligible Work Week" shall mean any and all weeks during which a Collective Member performed compensable work for Defendant in the position of ASM during any workweek during the Relevant Period.

1.13 **Employer Payroll Taxes**. "Employer Payroll Taxes" shall mean all tax payments an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation, including FICA, FUTA, and SUTA obligations. Defendant shall pay Employer Payroll Taxes separately from the Gross Settlement Fund.

1.14 **Final Order and Judgment**. "Final Order and Judgment" shall mean the final Order entered by the Court approving the Settlement and entering Judgment pursuant to this Agreement. A proposed version of the Final Order and Judgment shall be submitted to the Court in the form attached hereto as Exhibit A.

1.15 **Gross Settlement Fund**. "Gross Settlement Fund" shall mean the Five Hundred And Fifty Thousand Dollars And Zero Cents ($550,000.00) that Defendant has agreed to pay to fully resolve and settle this Litigation, including any and all amounts to be paid to Collective Members, including: employees' share of payroll taxes; Settlement Administration Expenses; and any Court-approved Service Awards. With the exception of any attorneys' fees, costs and expenses paid to Counsel for Plaintiff and Collective Members (as specified in Section 3.3 below) and any Employer Payroll Taxes owed, the Gross Settlement Fund shall be Defendant's only monetary obligation related to this Settlement.

1.16 **Individual Settlement Amount**. "Individual Settlement Amount" shall mean the amount offered to each Collective Member pursuant to the formula set forth in Section 3.6 of this Agreement.

1.17 **Litigation**. "Litigation" shall mean *Ratcliffe v. Food Lion*, *LLC*, No. 18 Civ. 01177 (Richardson, J.)

1.18 **Net Settlement Fund**. "Net Settlement Fund" shall mean the remainder of the Gross Settlement Fund after deductions for Settlement Administration Expenses and any Court-approved Service Awards. The Net Settlement Fund shall be used to pay all amounts due to Collective Members.

1.19 **Notices**. "Notices" shall mean, collectively, the proposed Notice of Settlement of Collective Action Lawsuit to be distributed to Collective Members, which is attached as Exhibit B. The Notices shall advise each Collective Member of his or her Settlement Payment.

1.20 **Order Granting Approval of Settlement**. "Order Granting Approval of the Settlement" shall mean an order entered by the Court, which gives final approval to the Settlement and this Agreement and dismisses the Litigation with prejudice, in a form substantially similar to the Proposed Order attached hereto as Exhibit A.

1.21 **Parties**. "Parties" shall refer to the Plaintiff and Defendant.

4

1.22    **Plaintiff**.  "Plaintiff" shall refer to Terry Ratcliffe.

1.23    **Qualified Settlement Fund**. "Qualified Settlement Fund" or "QSF" shall mean the account established by the Claims Administrator paid by Defendant.  The QSF will be controlled by the Claims Administrator subject to the terms of this Agreement and any applicable Court order(s).  Interest, if any, earned on any monies in the QSF will become part of the Net Settlement Fund.

1.24    **Relevant Period**.  "Relevant Period" shall mean the 1,304 days prior to the date a Collective Member filed his or her consent to join form (the FLSA three-year statutory period, plus 209 days of tolling)[1] in this Litigation through the date this Agreement is executed.

1.25    **Service Awards**.  "Service Awards" shall mean an amount approved by the Court to be paid to Plaintiff and certain Collective Members, as set forth in Section 3.4, in recognition of their efforts on behalf of Collective Members, and for executing a general release of any and all potential claims, whether known or unknown.

1.26    **Settlement**.  "Settlement" shall mean the settlement embodied in this Agreement, and all exhibits.

1.27    **Settlement Administration Expenses**.  "Settlement Administration Expenses" shall mean those expenses incurred and charged by the Claims Administrator in effectuating the Settlement.

2.    **APPROVAL AND CLASS NOTICE**

2.1    **Retention and Duties of Claims Administrator.**  The Claims Administrator shall be responsible for establishing a QSF account; preparing and mailing the Notices; preparing and mailing settlement checks; distributing Court-approved Service Awards and attorneys' fees and expenses; calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; calculating all Individual Settlement Amounts to be paid to Collective Members; retaining and providing a copy of settlement checks signed and cashed to Counsel for Plaintiff and Collective Members and Defendant's Counsel; and, if requested by the Parties, preparing a declaration describing all duties performed and claims administration statistics.  The Parties agree to cooperate with the Claims Administrator and assist it in administering the Settlement.  All Settlement Administration Expenses shall come out of the Gross Settlement Fund.  If the Settlement is not given final approval by the Court and does not become Effective, the Parties shall bear settlement administration fees and costs equally.

2.2    The Parties will have equal access to the Claims Administrator and all information related to the administration of the Settlement.  Defendant's Counsel and Counsel for Plaintiff and Collective Members have the right to make inquiries and receive any information from the

---

[1]    Although the Parties dispute which is the operative tolling agreement, they agree for purposes of this Settlement that the tolling agreement executed by Outten & Golden LLP and Jackson Lewis on April 11, 2018 shall apply.

5

Claims Administrator as is necessary to the administration of this Settlement. The Claims Administrator shall provide such information to counsel for either Party upon request. The Claims Administrator will provide regular reports to counsel for the Parties regarding the status of the mailing of the Notices to Collective Members, the claims administration process, and distribution of the settlement checks.

2.3 Defendant agrees to cooperate with the Claims Administrator, and to provide accurate information, to the extent reasonably available, necessary to calculate the Individual Settlement Amounts. Individual settlement amounts shall be based on the payroll records for class members made available by Defendant. There is a rebuttable presumption that Defendant's payroll records and personnel records are correct, but the collective members will have the opportunity, should they disagree with Defendant's records, to provide documentation and/or explanation to show a contrary number of weeks worked. In the event of any such disagreement, class members must present this information to the Court before the Court approves the Settlement.

2.4 **Settlement Approval by the Court.** On or before five (5) calendar days of the execution of this Agreement, or as may otherwise be agreed to between the Parties, Plaintiff will file the Approval Motion. Plaintiff will provide Defendant with a draft of the Approval Motion three (3) calendar days before its filing.

2.5 **Effect of Failure to Grant Approval.** In the event that the Court fails to approve this Agreement (except as to attorneys' fees and costs as otherwise provided in Sections 3.3(A) and (B) herein), the Parties (a) will attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated settlement and agreement, and/or (b) seek reconsideration or appellate review of the decision denying approval of the Agreement. In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, then: (i) this Agreement shall have no force or effect; (ii) neither this Agreement, nor any other related papers or orders, nor the negotiations leading to the Settlement, shall be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iii) none of the Parties will be deemed to have waived any claims, objections, defenses, or arguments with respect to any issue; and (iv) the Litigation will proceed as if no settlement had been attempted.

2.6 **Collective Member Notice of Settlement Approval.**

(A) Within seven (7) calendar days of the Approval Date, Defendant shall give the Claims Administrator a list, in electronic form, of all Collective Members' names, last known addresses, dates of employment during the Relevant Period, and weeks each individual worked during the Relevant Period ("Collective List"). The version of the Collective List provided to the Claims Administrator shall also include each individual's Social Security Number and last known telephone number. A copy of the list, with the exception of the Social Security Numbers, shall also be provided to Counsel for Plaintiff and Collective Members.

6

(B)     Within fourteen (14) calendar days of receiving the Collective List, the Claims Administrator shall (1) provide to Defendant's Counsel and Counsel for Plaintiff and Collective Members the total Individual Settlement Amount due to each Collective Member, together with the Claims Administrator's calculations of such Individual Settlement Amounts, and (2) notify Defendant of the total amount of Defendant's share of payroll taxes due for the Individual Settlement Amounts due to Collective Members.

(C)     Within seven (7) calendar days of the Effective Date, Defendant shall provide the Claims Administrator with: (1) the Gross Settlement Fund, (2) the anticipated amount of Employer Payroll Taxes due; and (3) the amount approved by the Court for the attorneys' fees and costs of Counsel for Plaintiff and Collective Members.

(D)     Prior to mailing the Notices, the Claims Administrator will update the addresses for those on the Collective List using the National Change of Address database and other available resources deemed suitable by the Claims Administrator.

(E)     Within fourteen (14) calendar days of the Effective Date, or as soon thereafter as practicable, the Claims Administrator shall send the applicable Notice to each Collective Member, using each member's last known address as provided by Defendant and as updated by the Claims Administrator.  The Notices shall be sent by mail via First Class United States mail, postage prepaid, and electronic mail. The Claims Administrator shall give the Parties two (2) business days' notice before the Notices are sent out.  The Notices shall inform all Collective Members of their rights under this Agreement.

(F)     The Notices mailed to Collective Members shall also include a check in the amount of each Collective Member's Individual Settlement Amount.  Settlement checks issued pursuant to this Agreement shall expire one hundred and eighty (180) calendar days from when initially mailed or subsequently re-mailed by the Claims Administrator.

(G)     If any Notices are returned as undeliverable, the Claims Administrator shall forward them to any forwarding addresses provided by the U.S. Postal Service.  If no such forwarding address is provided, or if the forwarding address(es) provided return undeliverable. The Claims Administrator shall perform skip traces using Collective Member's Social Security Number to attempt to obtain the most recent addresses for these Collective Members and re-mail Notice.

**2.7     Claims Administrator Reporting.**  After issuing the Notices, the Claims Administrator shall, on a weekly basis, compile and transmit to Defendant's Counsel and Counsel for Plaintiff and Collective Members statistics on the number of individuals who have endorsed and cashed settlement checks.

**3.     SETTLEMENT TERMS**

**3.1     Binding Agreement.**  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

DocuSign Envelope ID: 0922B030-40DD-4898-A58C-AC81E98CE535

3.2    **Settlement Payments.**

(A)    Defendant agrees to pay Five Hundred Fifty Thousand Dollars And Zero Cents ($550,000.00), which shall resolve and satisfy all monetary obligations to Collective Members under this Agreement, including all Settlement Administration Expenses, payments to Service Award payments to Collective Members, and the employees' share of payroll taxes. In addition, Defendant agrees to pay attorneys' fees of Counsel for Plaintiff and Collective Members of no more than Six Hundred Thousand Dollars and Zero Cents ($600,000.00) and costs and expenses of no more than Fifty Five Thousand Six Hundred Dollars and Zero Cents ($55,600.00). Aside from the Employer Payroll Taxes, Defendant shall pay no more than the amounts listed in this paragraph related to this Settlement.

(B)    The Parties agree that the QSF Account is intended to be a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended (the "Code"), 26 U.S.C. Section 468B and Treas. Reg. §1.468B-1, 26 C.F.R § 1.468B-1, *et seq.*, and will be administered by the Claims Administrator as such. With respect to the QSF Account, the Claims Administrator shall: (1) calculate, withhold, remit and report each Collective Member's share of applicable payroll taxes (including, without limitation, federal, state and local income tax withholding, FICA, Medicare and any state or local employment taxes), and indemnify Defendant for any penalty arising out of any error or incorrect calculation and/or interest with respect to any late deposit of the same; (2) satisfy all federal, state and local and income and other tax reporting, return and filing requirements with respect to the QSF Account; and (3) satisfy out of the QSF Account all (i) taxes (including any estimated taxes, interest or penalties) with respect to the interest or other income earned by the QSF Account, and (ii) fees, expenses and costs incurred in connection with the opening and administration of the QSF Account and the performance of its duties and functions as described in this Stipulation. The Claims Administrator will agree to indemnify and hold harmless the Parties for and against any claims or liabilities resulting from errors or omissions in its administration of the QSF Account.

3.3    **Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)    In their Approval Motion, Counsel for Plaintiff and Collective Members shall ask the Court to approve payment of Six Hundred Thousand Dollars And Zero Cents ($600,000.00) as an award of attorneys' fees, which shall be paid by Defendant separately in addition to the Gross Settlement Fund. In addition, Plaintiffs' Counsel shall seek reimbursement of actual case-related costs and expenses not to exceed Fifty Five Thousand Six Hundred Dollars and Zero Cents ($55,600.00), which shall also be paid by Defendant in addition to the Gross Settlement Fund. Defendant shall not oppose this application for attorneys' fees and costs and expenses. These amounts, to the extent approved by the Court, shall constitute full satisfaction of any claim for attorneys' fees or costs and expenses, and Plaintiff and Counsel for Plaintiff and Collective Members agree that they shall not seek, nor be entitled to, any additional attorneys' fees or costs and expenses under any theory or from any

8

source, incurred in relation to this case other than for any fees, costs and expenses incurred related to any efforts to enforce the terms of this Agreement.

(B)    The substance of Counsel for Plaintiff and Collective Members' application for attorneys' fees and costs and expenses is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement, except that the Parties stipulate that Plaintiffs are prevailing parties solely for the Court's consideration of the award of attorneys' fees and costs. The outcome of any proceeding related to Counsel for Plaintiff and Collective Members' application for attorneys' fees and costs and expenses shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. If the Court awards less than the requested fees and costs and expenses, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder.

(C)    Within fourteen (14) calendar days after the deposit of the funds set forth in Section 2.6(C), the Claims Administrator will distribute payment of the Court-approved attorneys' fees, costs, and expenses. Counsel for Plaintiff and Collective Members shall provide the Claims Administrator with any information required to effectuate such payment. The Claims Administrator will issue IRS Form 1099s to Counsel for Plaintiff and Collective Members to reflect payment of their attorneys' fees, costs and expenses.

(D)    Payments of attorneys' fees and costs pursuant to Section 3.3(C) shall be made without withholding, and be reported to the IRS and to each firm under the firm's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form W-9.

**3.4**    **Service Awards to Plaintiff and Certain Collective Members.** In the Approval Motion, Counsel for Plaintiff and Collective Members will apply to the Court for Plaintiff and each of the following Collective Members to receive a Service Award from the Gross Settlement Fund for services rendered Collective: Alan Westing, Michael Noce, Antoinette Gray, Matthew Losak, Ericka Bennett, Steve Micchelli, Gary Melton, and Jonathan Shelton. Plaintiff will seek Court-approval for the following amounts: Seven Thousand Five Hundred Dollars and Zero Cents ($7,500.00) for Plaintiff ; Five Thousand Dollars and Zero Cents ($5,000.00) for Collective Members Westing, Noce, Gray, and Losak; and Two Thousand Five Hundred Dollars and Zero Cents ($2,500.00) for Collective Members Bennett, Micchelli, Melton, and Shelton. Defendant will not oppose such application provided it is made in accordance with the terms of this Agreement. The outcome of the Court's ruling on the application for an Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. The amount of Service Awards sought but not awarded shall remain in the Net Settlement Fund. Within fourteen (14) calendar days after the deposit of the funds set forth in Section 2.6(C), the Claims Administrator will distribute payment of Court-approved Service Awards from the Gross Settlement Fund.

9

**3.5**     **Unclaimed Funds.**    Any amount remaining 200 days after the Claims Administrator transmits payment to Collective Members will be distributed among the Collective Members who have timely cashed their checks, or, if the amount remaining is small enough that a redistribution is not sensible, the unclaimed funds will be donated to the Charity under the *cy pres* doctrine.

**3.6**     **Allocation to Collective Members.**

(A)     The Net Settlement Fund shall be allocated as follows:

       (1)     First, each Collective Member shall be allocated a base award of Two Hundred Dollars and Zero Cents ($200.00) ("Base Award");

       (2)     Second, the Claims Administrator shall total all Base Awards to Collective Members, and subtract the total from the Net Settlement Fund. The amount remaining (the "Allocation Fund") shall be allocated as follows:

             (a)     Each Collective Member will receive one (1) point for each Applicable Workweek;

             (b)     Add all points for all Collective Members together to obtain the "Denominator";

             (c)     Divide the number of points for each Collective Member by the Denominator to obtain each Collective Member's share of the Allocation Fund ("Member's Total Percentage Share of Net Settlement Fund"); and

             (d)     Multiply each Collective Member's Total Percentage Share of the Allocation Fund by the Allocation Fund.

             (e)     To calculate each Collective Member's total Individual Settlement Amount, add the amount calculated from Section 3.6(A)(1) (Base Award) to the amount calculated from Section 3.6(A)(2)(d).

(B)     The Settlement shares have been calculated by the parties and are included in Exhibit B, attached hereto.

(C)     Within sixty (60) calendar days after the distribution of settlement checks to Collective Members, the Claims Administrator will provide Class Counsel with a list of any Collective Members who have not cashed their checks. The Claims administrator shall provide updates lists of uncashed checks upon request by Plaintiffs.

### 3.7    Taxability of Settlement Payments.

(A)    For tax purposes, half of each Collective Member's Individual Settlement Amount calculated under Section 3.6(A) shall be treated as back wages, and half shall be treated as liquidated damages and other non-wage relief.

(B)    Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2. Payments treated as liquidated damages and other non-wage relief shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security number on an IRS Form 1099. The Claims Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, issuing the settlement checks and Service Awards and issuing IRS Forms W-2 and Form 1099. The Claims Administrator shall determine the appropriate tax treatment of any Service Award pursuant to Section 3.4.

(C)    The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Collective Member receiving an Individual Settlement Amount and/or Service Award. Defendant makes no representations, and it is understood and agreed that Defendant has made no representations, as to the taxability of any portions of the settlement payments to any Collective Members, the payment of any costs, expenses or award of attorneys' fees, or any Service Awards. The Notices will advise Collective Members to seek their own tax advice prior to acting in response to that Notice. Neither Counsel for Plaintiff and Collective Members nor Defendant's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

(D)    The Claims Administrator shall be responsible for making all reporting, deposits, and withholdings with respect to all amounts payable to Collective Members required pursuant to any federal, state, or local tax law or regulation hereunder under the EIN of the QSF Account.

(E)    The Claims Administrator shall handle all tax reporting with respect to the payments made pursuant to this Agreement, and shall report the payments in accordance with applicable law.

### 3.8    Releases.

(A)    **Release of Claims by Collective Members**. By operation of, and effective as of the Effective Date, and except as to such rights or other claims as may be created by this Agreement, each Collective Member fully, finally and forever completely settles, compromises, releases, remises and discharges Defendant Food Lion, LLC,

and its current or former shareholders, owners, officers, directors, members, representatives, trustees, employees, agents, insurers, attorneys, advisors, any employee benefit or welfare program or plan (including the administrator, trustees, fiduciaries, and insurers of such program or plan), successors, and predecessors, as well as those of its respective affiliates, parents, and subsidiaries ("Releasees") from any and all state or federal wage and hour claims that were or, could have been brought based on the specific factual allegations contained in the Litigation that arise from his or her employment as an exempt classified Assistant Store Manager, that occurred or are alleged to have occurred at any time through the date this Agreement is executed, including without limitation claims for overtime compensation, penalties, uncompensated time or unpaid wages, liquidated damages, interest, attorney's fees or expenses, and further including claims under and the Fair Labor Standards Act , 29 U.S.C. §201, *et seq.* or any applicable state statute, state common law and equitable principles, or express or implied wage contract claims, whether known or unknown, in law or in equity, that accrued or accrue prior to the date this Agreement is executed ("Released Claims"). This release includes any claims which are derivative of the claims being released.

(B)    In addition, there shall be included language on the back of each check sent to all Collective Members, stating, "I agree to all terms of the Settlement Agreement in *Ratcliffe v. Food Lion, LLC*, No. 18-cv-01177, and waive any right to bring suit for wages under the Fair Labor Standards Act, state law, common law, or any other law as stated therein."

(C)    **General Release of Claims by Service Award Recipients**. In addition, to the extent permitted by law, Plaintiff and Collective Members who receive Service Awards generally release Defendant and the Releasees from any and all claims, actions, causes of action, lawsuits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints and demands whatsoever, whether in law or equity, known or unknown, which they may now have, or hereafter later determine that they have or had against Defendant and Releasees, including, but not limited to relating to his or her employment or termination of employment, that accrued or accrue prior to the date of the Final Order and Judgment; provided, however, that Plaintiff and Collective Members who receive Service Awards do not waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), subject to the condition that they agree not to seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom; and do not release any claim for breach of the terms of the Agreement.

(D)    Except as provided in this Agreement, Plaintiff, individually and collectively, hereby irrevocably and unconditionally releases, acquits, and forever discharges any claim that she may have against Defendant for attorneys' fees and/or costs and expenses associated with Counsel for Plaintiff's and Collective Members' representation of Plaintiff in this Litigation. Counsel for Plaintiff and Collective Members further understands and agrees that any fee payments approved by the

Court will be the full, final and complete payment of all attorneys' fees, costs and expenses associated with its representation in the Litigation.

**3.9    No Assignment.**

Plaintiff represents and warrants that she has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**3.10    Non-Admission.**

Defendant has agreed to the terms of Settlement herein without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this Settlement will (i) avoid the further expense and disruption of Defendant's business due to the pendency and expense of litigation, and (ii) put the claims in the Litigation finally to rest.  Notwithstanding this provision, Defendant stipulates that solely for the purposes of the Court's consideration of attorneys' fees and costs that Plaintiffs are prevailing parties under the FLSA and entitled to an award of reasonable attorneys' fees and costs.

**3.11    Notices.**

All notices, requests, demands and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered personally or mailed, postage prepaid, by first-class mail to the undersigned persons at their respective addresses as set forth herein:

Counsel for Plaintiffs:

> Justin M. Swartz
> Outten & Golden LLP
> 685 Third Avenue, 25th Floor
> New York, NY 10017
> Phone: (212) 245-1000
> Facsimile: (646) 509-2060

> Jason Conway
> CONWAY LEGAL, LLC
> 1700 Market Street, Suite 1005
> Philadelphia, PA 19103
> Phone: (215) 278-4782
> Facsimile: (215) 278-4807

> Chuck Yezbak
> YEZBAK LAW OFFICES PLLC
> 2021 Richard Jones Rd. Suite 310-A
> Nashville, Tennessee 37215
> Telephone: (615) 250-2000

13

Counsel for Food Lion, LLC:

D. Christopher Lauderdale
William Robert Gignilliat IV
Cashida Okeke
JACKSON LEWIS P.C.
15 South Main Street Suite 700
Greenville, SC 29607
Telephone: (864) 232-8000
Facsimile: (864) 235-1381

Thomas Patrick Murphy
JACKSON LEWIS P.C. 10701
Parkridge Blvd. Suite 300
Reston, Virginia 20191
Telephone: (703) 483-8300
Facsimile: (703) 483-8301

Rachel Dix Bishop
Lauren Paxton Roberts
STITES & HARBISON, PLLC 401
Commerce Street, Suite 800
Nashville, TN 37219
Telephone: (615) 782-2284
Facsimile: (615) 742-0722

**3.12 Publicity.**

(A)     The terms of this Agreement shall remain confidential until the filing of the Approval Motion. Until that Motion is filed, Plaintiff and Counsel for Plaintiff and Collective Members agree that they have not and will not discuss, disclose, communicate, or publish the Agreement.  Until the filing of the Approval Motion, Counsel for Plaintiff and Collective Members shall not report the Agreement in any medium or in any publication, and shall not contact or respond to inquiries from the press, reporters or general media regarding the fact or terms of the Agreement.  As used herein, "press, reporters, or general media" shall refer to and include newspapers, periodicals, magazines, online publications, and television and radio stations and programs, and any representative of the foregoing.  Upon receipt of any inquiry from the press, reporters or general media prior to the filing of the Approval Motion, Counsel for Plaintiff and Collective Members shall respond "we have no comment."  Nothing herein shall prevent Counsel for Plaintiff and Collective Members from communicating with Plaintiff and Collective Members regarding the terms of this Agreement.

(B)     Following the filing of the Approval Motion, Plaintiff and Counsel for Plaintiff and Collective Members and Defendant and Defendant's Counsel agree that they will not disparage or speak unfavorably about any of the other Parties or any of the other Releasees to third parties or in public or otherwise take any action or make any comment whatsoever that would harm, injure, or potentially harm or injury the goodwill of any Party or the other

14

DocuSign Envelope ID: 0922B030-40DD-4898-A58C-AC81E98CE535

Releasees.  This provision is not intended to nor shall it (or any other provision herein), prohibit either Party from cooperating with any government investigation or court order or from making a good-faith, truthful report to any government agency with oversight responsibility for Defendant.

**3.13    Miscellaneous.**

(A)    **Cooperation Between the Parties; Further Acts.**  The Parties shall cooperate fully with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

(B)    **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

(C)    **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arm's length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

(D)    **Captions.**   The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

(E)    **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

(F)    **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Tennessee, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(G)    **Continuing Jurisdiction.**   The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall not have jurisdiction to modify the terms of the Agreement or to increase Defendant's payment obligations hereunder.

(H) **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(I) **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

(J) **Facsimile/Electronic Signatures.** Any Party may execute this Agreement by signing, including by electronic means, or by causing its counsel to sign on the designated signature block below. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

(K) **Extensions of Time.** If any deadlines related to this Settlement cannot be met, Counsel for Plaintiff and Collective Members and Counsel for Defendant shall meet and confer to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Agreement. In the event that the Parties fail to reach such agreement, any of the Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Stipulation.

(L) **Counterparts.** The Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

The Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto; but this Agreement is not designed to and does not create any third-party beneficiaries.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

16

**Plaintiff Terry Ratcliffe:**

DATED:   October __, 2020
            10/8/2020

                                 By:    Terry Ratcliffe

**Defendant Food Lion, LLC:**

DATED:  October ___, 2020

                                 By:  _____

                                   Name: _____
                                   On behalf of Defendant Food Lion, LLC

17

# Exhibit A

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

TERRY RATCLIFFE, on behalf of herself and all others similarly situated,

Plaintiff,

v.

FOOD LION, LLC,

Defendant.

**Civil Action No. 18-cv-01177**

Judge Eli J. Richardson

Magistrate Judge Alistair Newbern

## [PROPOSED] ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, SERVICE AWARDS, ATTORNEYS' FEES AND COSTS, AND DISMISSAL OF LAWSUIT

The above-entitled matter came before the Court on Plaintiff's Motion for Approval of Settlement, Service Awards, Attorneys' Fees and Costs, and Dismissal of Lawsuit ("Approval Motion"). After reviewing the Approval Motion, the Memorandum of Law in Support ("Memorandum of Law"), and the Declarations of Justin M. Swartz, Jason Conway, and Chuck Yezbak, supporting exhibits, and other supporting documents, the Court hereby finds as follows:

### The Settlement Is Approved.

1. The Court approves and incorporates by reference all of the definitions contained in the Joint Stipulation of Settlement and Release ("Settlement Agreement").

2. The Court hereby approves the Settlement. Courts approve FLSA settlements that are reached as a result of contested litigation to resolve bona fide disputes.

3.     Here, the Settlement meets the standard for approval.  The Settlement is a fair, reasonable, and adequate resolution of a bona fide dispute over FLSA provisions.  *See West v. Emeritus Corp.*, No. 15 Civ. 437, 2017 WL 2880394, at *1 (M.D. Tenn. July 5, 2017).

**The Settlement Notice and Distribution Plan Are Approved.**

4.     The settlement Notice, as well as its proposed distribution plan, are hereby approved.  The Notice sufficiently informs Collective Members of the terms of the Settlement. The Claims Administrator shall distribute the Notices according to the procedure set forth in the Settlement Agreement.

**The Service Awards Are Approved.**

5.     The requested Service Awards to the Plaintiff and Opt-In Plaintiffs Alan Westing, Michael Noce, Antoinette Gray, Matthew Losak, Ericka Bennett, Steve Micchelli, Gary Melton, and Jonathan Shelton ("Opt-In Plaintiffs") are approved.  The requested Service Awards are reasonable in light of the contributions the Plaintiff and Opt-In Plaintiffs made to advance the prosecution and resolution of this lawsuit.  The amounts shall be paid from the Gross Settlement Fund.

**The Settlement Administrator Is Approved.**

6.     The Court approves CAC Services Group, LLC as the Claims Administrator.

**The Attorneys' Fees and Costs Are Approved.**

7.     Plaintiff's Counsel's request for attorneys' fees and costs is approved.  The Court finds the requested fee award of $600,000.00 is reasonable in light of the benefit their efforts conferred on Collective Members, and because it is less than Plaintiff's Counsel's actual lodestar, which is itself presumptively reasonable.  *See Blum v. Stenson*, 465 U.S. 886, 888 (1984); *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016);

2

*Williams v. Bevill*, No. 14 Civ. 82, 2016 WL 773230, at *3 (E.D. Tenn. Feb. 8, 2016), report and recommendation adopted, No. 14 Civ. 82, 2016 WL 792417 (E.D. Tenn. Feb. 29, 2016). The Court also finds that the $42,562.96 in costs and expenses incurred by Plaintiff's Counsel in litigating this matter are reasonable, and are therefore approved.

**Dismissal and Post-Dismissal Procedure**

8.       The Litigation is hereby dismissed with prejudice, with costs as provided above.

9.       The Court will retain jurisdiction over this action for purposes of enforcing the Settlement Agreement. Plaintiff or Plaintiff's Counsel may move to reopen the case if payments under the Settlement are not made timely.

10.       The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this ___ day of _____, 2020

_____
Honorable Eli J. Richardson
United States District Judge

3

# Exhibit B

<u>UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE</u>

*Ratcliffe v. Food Lion, LLC*, Case No. 18 Civ. 01177

<u>NOTICE OF COLLECTIVE ACTION SETTLEMENT</u>

*This is a court authorized notice.  This is not a solicitation from a lawyer.*

**PLEASE READ THIS NOTICE CAREFULLY.  YOU ARE RECEIVING THIS NOTICE BECAUSE YOU WORKED AS AN ASSISTANT STORE MANAGER FOR FOOD LION AND PREVIOUSLY SUBMITTED A CONSENT TO JOIN FORM IN THIS CASE, AND YOU ARE ENTITLED TO A PAYMENT FROM A COLLECTIVE ACTION SETTLEMENT.**

**A settlement check payable to you is enclosed.  Read this entire Notice before signing and cashing the check.**

**Deadline: The last day to cash the enclosed settlement check is [180 days from mailing]. After that date, the enclosed check will be null and void, and you will no longer be eligible for a payment from the above-captioned action.**

- This Notice is directed to all individuals who were employed by Food Lion, LLC ("Defendant" or "Food Lion") as exempt Assistant Store Managers ("ASMs") and previously opted-in to (or joined) this lawsuit by filing a Consent to Join form in this action.

- This lawsuit was brought by a former Assistant Store Manager (the "Plaintiff") who claims that Food Lion misclassified her and other ASMs (together "Collective Members") as exempt from overtime under the Fair Labor Standards Act ("FLSA").  As a result, the Plaintiff alleges that Food Lion failed to pay ASMs overtime for the hours they worked over 40 in a workweek in violation of the FLSA.

- Food Lion denies these allegations and believes that ASMs were and are properly classified as exempt and received all monies to which they are entitled.

- The Plaintiff and Food Lion have agreed to this settlement to avoid the burden, expense, inconvenience, and uncertainty of on-going litigation.  The Court has approved this settlement, but has not made any ruling on the merits of the Plaintiff's claims or Food Lion's defenses.

- **A settlement check for $XX, representing your share of the settlement, is enclosed.**  This amount is determined by the allocation formulation created by the settlement and based on the number of weeks in which you worked as an exempt ASM during the [1,304 days preceding the date the Collective Member opted-in to this lawsuit] through [the date the Joint

**Questions?**
Contact Laura Iris Mattes or Maya Jumper toll-free at (877) 468-8836 or FoodLionOTCase@outtengolden.com

Stipulation of Settlement and Release is executed] (the "Covered Period"). Based on Food Lion's records, your number of workweeks as an ASM during the Covered Period is [**XX**].

**This notice contains important information that affects your rights. Please read it carefully.**

## BASIC INFORMATION

### 1. WHY AM I RECEIVING THIS NOTICE AND WHAT IS THE CASE ABOUT?

You are receiving this notice because you previously opted-in to (or joined) this lawsuit. This Notice explains the terms of the settlement, your rights, and what claims are being released by ASMs. Collective Members are those ASMs who worked for Food Lion during the Covered Period.

The lawsuit alleges that Food Lion misclassified ASMs as exempt from federal overtime law and failed to pay ASMs overtime for hours they worked over 40 in a week. Food Lion denies these allegations and maintains that ASMs were properly classified as exempt from overtime.

### 2. WHY IS THIS A COLLECTIVE ACTION?

In a collective action, one or more individuals can bring a lawsuit on behalf of others who are "similarly situated" to them. It is similar, though not identical, to a class action. The individual who initiated this action is called the "Plaintiff." By previously completing and returning a Consent to Join form, you joined the case and became part of the "Collective." In a collective action, the Plaintiff asks the court to resolve the issues for everyone in the Collective.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

### 3. WHAT DOES THE SETTLEMENT PROVIDE?

Food Lion has agreed to pay money into a settlement fund, a portion of which has been allocated among Collective Members who qualify for a settlement payment based primarily upon the number of weeks they worked as an ASM in the Covered Period. The settlement fund will cover settlement payments to Collective Members, service awards to Plaintiff and others for their service in obtaining this settlement, and the costs of the Claims Administrator to facilitate this settlement. Any uncashed checks by Collective Members will be redistributed to Collective Members who cashed their checks or donated to a designated *cy pres* beneficiary, depending on the amount remaining.

**Checks that are not cashed on or before [insert 180 days from check date] will be null and void.**

**Questions?**
Contact Laura Iris Mattes or Maya Jumper toll-free at (877) 468-8836 or FoodLionOTCase@outtengolden.com

## 4. HOW MUCH MONEY AM I RECEIVING AND HOW WAS IT CALCULATED?

Based on the allocation formula that has been approved by the court, you are receiving a settlement payment of $_____. One-half of the payment will be considered wages and taxes will be withheld from that portion. The other half will be considered non-wage compensation and taxes will not be withheld. Please consult your tax advisor or accountant regarding the taxability of this settlement payment.

The allocation formula takes into account the number of weeks in which you worked as an ASM during the Covered Period, but guarantees a minimum entitlement of at least $200.00 to each Collective Member. The settlement agreement executed by the Parties and approved by the Court (the "Settlement Agreement") contains the allocation formula. You may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 8 below.

# HOW YOU GET A PAYMENT

## 5. HOW DO I GET MY PAYMENT?

Your settlement check is enclosed. All you have to do is sign and cash the settlement check.

## 6. WHAT AM I GIVING UP BY PARTICIPATING IN THE SETTLEMENT?

By cashing the enclosed check, you are releasing Defendant Food Lion, LLC, and its shareholders, owners, officers, directors, employees, agents, insurers, attorneys, successors, and predecessors, as well as those of its respective affiliates, parents, and subsidiaries from any and all state or federal wage and hour claims that were or, could have been brought based on the specific factual allegations contained in the Litigation that arise from your employment as an exempt classified ASM, that occurred or are alleged to have occurred at any time through the date this Agreement is executed, including without limitation claims for overtime compensation, penalties, liquidated damages, interest, attorneys' fees or expenses, and further including claims under the Fair Labor Standards Act , 29 U.S.C. § 201, *et seq.* or any applicable state statute, whether known or unknown, in law or in equity, that accrued or accrue prior to the date this Agreement is executed. The full scope of the release is set forth in the Settlement Agreement.

# THE LAWYERS REPRESENTING YOU

## 7. DO I HAVE A LAWYER IN THIS CASE AND HOW WILL THEY BE PAID?

By previously opting into the case, you agreed to have Counsel for Plaintiff and Collective Members, who are listed in Section 9 below, represent you for all purposes in the lawsuit, and to make decisions on your behalf concerning the litigation and any settlement. You also acknowledged your understanding that, in the event of any settlement or judgment, Counsel for Plaintiff and Collective Members would petition the court to award attorneys' fees for the greater of (1) their hourly rates multiplied by the number of hours expended on the lawsuit, or (2) one-

Questions?
Contact Laura Iris Mattes or Maya Jumper toll-free at (877) 468-8836 or FoodLionOTCase@outtengolden.com

third of the gross settlement. The Court has approved Counsel for Plaintiff and Collective Members request for payment of attorneys' fees and costs and expenses. These fees are to compensate Counsel for Plaintiff and Collective Members for investigating the facts, litigating the case, and negotiating the settlement. Food Lion will pay Counsel for Plaintiff and Collective Members attorneys' fees and expenses separately from the total settlement fund, which means that your settlement amount has not been reduced by such payments. The Court has also approved payments of $XX in total to XX, in recognition of the risks they took, the scope of the release they executed, and their service to Collective Members.

# FOR MORE INFORMATION

## 8. ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?

This Notice summarizes the terms of the settlement. More details are in the Settlement Agreement. You are encouraged to read it. To the extent there is any inconsistency between this Notice and the Settlement Agreement, the provisions in the Settlement Agreement control. You may obtain a copy of the Settlement Agreement by sending a request, in writing, to:

[Claims Administrator]
Food Lion ASM Settlement
[insert address]
[insert phone number]
[insert email]
[insert fax]

## 9. HOW DO I GET MORE INFORMATION?

If you have other questions about the settlement, you can contact the Claims Administrator, whose contact information in included in Section 8 above, or Counsel for Plaintiff and Collective Members at the addresses and/or telephone numbers below.

Justin M. Swartz
Deirdre Aaron
Maya S. Jumper
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Tel: (877) 468-8836
FoodLionOTcase@outtengolden.com

Laura Iris Mattes
Outten & Golden LLP
One California Street, 12th Floor

Charles P. Yezbak, III
Yezbak Law Offices PLLC
2021 Richard Jones Rd., Suite 310-A
Nashville, Tennessee 37215
Telephone: (615) 250-2000

Jason Conway
Conway Legal, LLC
1700 Market Street, Suite 1005
Philadelphia, PA. 19103
Telephone: (215) 278-4782
Email: info@conwaylegalpa.com

2

**Questions?**
Contact Laura Iris Mattes or Maya Jumper toll-free at (877) 468-8836 or FoodLionOTCase@outtengolden.com

San Francisco, CA 94111
Tel: (415) 638-8800
FoodLionOTcase@outtengolden.com


DATED: _____

**Questions?**
Contact Laura Iris Mattes or Maya Jumper toll-free at (877) 468-8836 or FoodLionOTCase@outtengolden.com